IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHNNY RAY COLTEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-24-1059-STE |
| | ) |
| LELAND DUDEK, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant.[1] | ) |

### MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

---

[1] Leland Dudek became the Acting Commissioner of Social Security Administration on February 18, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.  PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 17-33). The Appeals Council denied Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.  THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 3, 2022, his application date. (TR. 19). At step two, the ALJ determined Mr. Colten suffered from severe inflammatory arthritis, osteoarthritis and allied disorders. (TR. 19). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 19).

At step four, the ALJ concluded that Mr. Colten retained the residual functional capacity (RFC) to:

> [P]erform light work as defined in 20 CFR 416.967(b). The claimant can lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk 6 hours; sit 6 hours in an 8 hour work day with normal breaks; never climb ladders/ropes/scaffolds; frequently climb ramps/stairs; frequently balance; and occasionally stoop, kneel, crouch, and crawl.

(TR. 20).

With this RFC, the ALJ concluded that Plaintiff was unable to perform his past relevant work. (TR. 31). As a result, the ALJ presented the RFC limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 61). Given the limitations, the VE identified four jobs from the Dictionary of Occupational Titles that Plaintiff could perform. (TR. 61-62). The ALJ then adopted the VE's testimony and concluded, at step five, that that Mr. Colten was not disabled based on his ability to perform the identified jobs. (TR. 32).

### III.   ISSUES PRESENTED

On appeal, Mr. Colten alleges legal error in the ALJ's evaluation of: (1) a medical opinion and prior administrative findings; (2) Plaintiff's RFC; and (3) Plaintiff's subjective allegations. (ECF No. 11:15-27).

### IV.   STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence . . . is more than a mere scintilla . . . and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V. THE ALJ'S CONSIDERATION OF PRIOR ADMINISTRATIVE FINDINGS AND A MEDICAL OPINION

Mr. Colten alleges legal error in the ALJ's failure to properly evaluate a medical opinion and prior administrative findings and a lack of substantial evidence supporting the same. (ECF No. 11:23-27). The Court agrees.

### A. The ALJ's Duty to Evaluate Prior Administrative Findings and Medical Opinions

The Social Security Administration has defined categories of evidence, including, as pertinent here, "medical opinions" and "prior administrative findings." *See* 20 C.F.R. § 416.913(a)(2), (3), (5). The regulations define a "medical opinion" as "a statement from a medical source about what an applicant can still do despite his impairment(s) and whether he has one or more impairment-related limitations involving the:

> (A) Ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (B) Ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (C) Ability to perform other demands of work, such as seeing, hearing, or using other senses; or the

(D) Ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 416.913(a)(2).

Prior administrative medical findings, in turn, are findings, other than the ultimate determination about whether an individual is disabled, about a medical issue made by Federal and State agency medical and psychological consultants at a prior level of review, based on a review of the evidence in the claimant's case record, including, but not limited to, an individual's RFC. 20 C.F.R. § 416.913(a)(5).

Under the regulations, when evaluating both prior administrative findings and medical opinions, the ALJ must articulate how persuasive she finds the evidence. 20 C.F.R. § 416.920c(b). Persuasiveness is determined primarily by an opinion's supportability and consistency, and the ALJ must explain how she considered those factors. 20 C.F.R. § 416.920c(b)(2) & (c)(1)-(2).[2] "Supportability" refers to the ALJ examining the medical source's own medical evidence and supporting explanations to determine whether the source's opinion (based on the evidence) are persuasive. 20 C.F.R. § 416.920c(c)(1). "Consistency" involves comparing the medical source's opinion with other medical evidence and prior administrative findings to see whether the opinions and evidence are consistent. 20 C.F.R. § 416.920c(c)(1).

The regulations "do not prescribe the depth at which the ALJ must discuss" the supportability and consistency factors. *J. T. L. v. Kijakazi*, No. 22-cv-02343, 2023 WL

---

[2] In addition, the ALJ may, but is not required to, discuss other considerations that may bear on the persuasiveness of a medical opinion, such as the relationship of the source to the claimant, the source's area of specialization, and other factors such as the source's familiarity with the disability program's policies and evidentiary requirements. *See* 20 C.F.R. § 416.920c(c)(3)-(5).

5017241, at *5 (D. Colo. Aug. 7, 2023) (citation and internal quotation marks omitted). At a minimum, the ALJ must provide "sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence." *Frazier v. Kijakazi*, No. 20-1147, 2022 WL 682661, at *5 (D.N.M. Mar. 8, 2022) (explaining ALJ's reasoning must be free of "rote analysis and conclusory explanations") (quotations omitted). *See also Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) (stating that the proper inquiry on judicial review is whether the reviewing court "can follow the adjudicator's reasoning" and "can determine that correct legal standards have been applied"); *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (stating ALJ's rationale must be "sufficiently specific" to permit meaningful appellate review.).

### B. The Prior Administrative Findings and Medical Opinion at Issue and the Administrative Law Judge's Related Findings

The evidence at issue involves Prior Administrative Findings offered by State Agency physicians Edna Daniel and Scott Newton, as well as a "physical assessment" form authored by Plaintiff's physician, Zubair Ashraf.

At the initial determination level, on April 26, 2022, Dr. Daniel assessed Plaintiff's RFC and concluded that he could:

- lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently;
- sit, walk, and stand for six hours during an 8-hour workday;
- frequently climb ramps & stairs, balance, stoop, kneel, crouch, crawl; and
- occasionally climb ladders, ropes, or scaffolds.

(TR. 71-76). Dr. Daniel also found that Plaintiff had no manipulative limitations. (TR. 74).

In the decision, the ALJ accurately summarized Dr. Daniel's findings and stated:

> Dr. Daniel explained her conclusions based on medical evidence available for review as of April 25, 2022. The residual functional capacity assessment was consistent with the entirety of the evidence of record at that time and supported by explanation. Thus, it was persuasive. However, evidence received since the initial determination level persuades the undersigned to conclude the claimant can never climb ladders/ropes/scaffolds and occasionally stoop. The postural limitations at the initial determination level are, therefore, only partially persuasive.

(TR. 30). On June 27, 2022, Dr. Newton reviewed the same evidence that Dr. Daniel had examined and reached the same conclusions regarding Plaintiff's RFC. (TR. 79-84). The ALJ acknowledged Dr. Newton's findings and stated:

> These conclusions are consistent with the entirety of the evidence of record, supported by explanation, and are persuasive. Dr. Newton concluded the claimant could frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl but only occasionally climb ladders/ropes/scaffolds (Exhibit 4A *Disability Determination Explanation at the Reconsideration Level*). Based on information received at the hearing level, the undersigned is persuaded to conclude the claimant can never climb ladders/ropes/scaffolds and stoop only occasionally as a result of his conditions. Hence, the conclusions regarding postural limitations at the reconsideration determination level are partially persuasive.

(TR. 31).

On June 10, 2022, Dr. Ashraf completed a "physical assessment" form, diagnosed Plaintiff with Seronegative Rheumatoid Arthritis, and found that Mr. Colten:

- could frequently lift and/or carry less than 10 pounds;
- could occasionally lift and/or carry 10-20 pounds;
- could never lift and/or carry 50 pounds;
- could sit 6 hours during an 8-hour workday;

- could stand and/or walk 2 hours during an 8-hour workday, including walking approximately 1 block without having to rest or experience significant pain;

- would need to take unscheduled breaks during the day in excess of breaks provided;

- would likely be absent from work 3-4 days per month owing to his impairments;

- could engage in fine manipulation with his fingers and could grasp, turn, and twist objects with his hands 60% of the day during an 8-hour workday; and

- could reach with his arms 80% of the day during an 8-hour workday.

(TR. 582-583).

The ALJ acknowledged Dr. Ashraf's opinions and stated:

While the claimant has rheumatoid arthritis, his progress notes do not document signs, symptoms, or complaints that would require the limitations described by Dr. Ashraf, M.D. The limitations described in Exhibit 5F are not consistent with the entirety of the evidence of record and are not supported by adequate explanation. Hence, the opinion set forth in Exhibit 5F is not persuasive.

(TR. 25).

### C. Error in the ALJ's Consideration of the Prior Administrative Findings and Medical Opinion

As stated, when reviewing the findings and opinion from Drs. Daniel, Newton, and Ashraf, the ALJ was required to explain whether she found the evidence persuasive, by discussing the evidence's "supportability" (which involves an examination of the medical source's own medical evidence to find support for his opinion and/or finding) and "consistency" (which involves comparing the medical source's opinion with other medical

evidence and prior administrative findings in the record to see whether the opinions and evidence are consistent). *See supra*.

Here, Mr. Colten argues that the ALJ failed to:

- provide a proper "supportability" analysis of Dr. Newton's findings; and
- provide a proper "consistency" analysis of all the aforementioned evidence submitted by all three physicians.

The Court rejects Plaintiff's first argument, as the ALJ cited Exhibit 4A where Dr. Newton explained his findings extensively[3] and found that Dr. Newton's findings were "supported by explanation." (TR. 31). However, the Court finds legal error and a lack of substantial evidence in the ALJ's "consistency" analysis with respect to all three physicians.

First, regarding Dr. Daniel, the ALJ simply concluded that "[T]he residual functional capacity assessment was consistent with the entirety of the evidence of record at that time[.]" The ALJ then qualified her conclusion by stating that evidence received after Dr. Daniel's findings led her to find that Mr. Colten was subject to greater postural limitations. *See* TR. 30. But the fact of the matter is that the ALJ failed to point to any external evidence with which Dr. Daniel's findings were "consistent." This failure constitutes legal error. *See Daniel W. v. Kijakazi*, No. 20-CV-525-JFJ, 2022 WL 834952, at *5 (N.D. Okla. Mar. 21, 2022) ("The plain language of the regulations is clear that the ALJ, *at a minimum*, must specifically explain how he applied the supportability and consistency factors in determining the persuasiveness of a medical source opinion.").

---

[3] See TR. 71-75.

Second, the ALJ stated that Dr. Newton's findings "[we]re consistent with the entirety of the evidence of record." (TR. 31). Even so, the ALJ thereafter qualified this conclusion, findings Dr. Newton's findings "partially persuasive" based on information received at the hearing level regarding Plaintiff's postural limitations. *See* TR. 31. But again, the ALJ failed to point to any evidence that was "consistent" with Dr. Newton's findings, which constitutes legal error. *See supra*.

It is true that the "the need for express analysis is weakened" when the challenged opinion and the RFC do not appear inconsistent. *See Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004). In this case, the RFC findings accurately reflected the findings from Drs. Daniel and Newton (and provided even greater restrictions) in the areas of his ability to perform light work, climb ramps and stairs, balance, stoop, kneel, crouch, crawl, sit, stand, walk, and climb ladders/ropes/scaffolds. However, the problem lies in the fact that the ALJ's "consistency" analysis lacks substantial evidence due to the inconsistencies with Dr. Ashraf's opinion, which the ALJ also failed to properly evaluate.

Granted, Dr. Ashraf authored his opinion on June 10, 2022, so it was not available when Dr. Daniel rendered her findings on April 26, 2022, but it *was* available when Dr. Newton rendered his findings on June 27, 2022. To be fair, Dr. Newton did not review the report as part of his determination,[4] an oversight which could arguably be attributed to Mr. Colten for not submitting the evidence for review. However, the ALJ did have the benefit of reviewing all of the evidence and had a duty to consider Dr. Ashraf's opinion

---

[4] *See* Tr. 80.

when considering whether the State Agency physicians' opinions were consistent with the other evidence of record.

As discussed, the ALJ rejected Dr. Ashraf's opinion, stating that the limitations noted therein "[we]re not consistent with the entirety of the evidence of record and [we]re not supported by adequate explanation." (TR. 25). But as argued by Mr. Colten, this "analysis" is lacking, as the ALJ failed to point to *any* evidence which undermined Dr. Ashraf's opinion in the first instance. Not only has the ALJ committed legal error by failing to properly explain the consistency and supportability factors when evaluating Dr. Ashraf's opinion, the physician's own progress notes support his conclusions, which renders the "explanation" provided by the ALJ lacking in substantial evidence. *See* TR. 413 (noting Mr. Colten's "inflammatory back pain" lasting for more than 3 months, and improved by rest; a "concern" for inflammatory arthritis" based on pain in Plaintiff's hands); TR. 423 (noting Plaintiff's knee x-ray showed "severe osteoarthritis"); TR. 437 (noting diagnosis of rheumatoid arthritis of multiple sites without rheumatoid factor, "multiple joint tenderness"); TR. 624 (noting numbness in both of Plaintiff's legs and ordering a nerve conduction study).

The errors in evaluating Dr. Ashraf's opinion necessarily affected the ALJ's evaluation of the prior administrative findings from Drs. Daniel and Newton. On the one hand, the evidence was not available when Dr. Daniel made her findings. But the ALJ was required to consider the State Agency physicians' opinions in light of *all* of the evidence, including Dr. Ashraf's, which she did not do. The error was problematic because Dr. Ashraf opined that Mr. Colten:

- could stand and/or walk 2 hours during an 8-hour workday, including walking approximately 1 block without having to rest or experience significant pain;

- would need to take unscheduled breaks during the day in excess of breaks provided;

- would likely be absent from work 3-4 days per month owing to his impairments;

- could engage in fine manipulation with his fingers and could grasp, turn, and twist objects with his hands 60% of the day during an 8-hour workday; and

- could reach with his arms 80% of the day during an 8-hour workday.

(TR. 582-583). These limitations conflicted with the findings from Drs. Daniel and Newton and with the ultimate RFC found by the ALJ. *See supra*. The ALJ, of course, was allowed to reject Dr. Ashraf's opinions, but not without undergoing the regulatory analysis noted above. The ALJ failed in this regard, and even if her explanations for rejecting Dr. Ashraf's opinions had been legally sound, the "consistency" analysis still lacked substantial evidence. *See supra*.

In sum, the Court finds legal error in the ALJ's evaluation of the prior administrative findings and medical opinion from Drs. Daniel, Newton, and Ashraf and a lack of substantial evidence supporting the limited consistency analysis given to Dr. Ashraf's opinion, as discussed above. These errors warrant remand.

## VI.  PLAINTIFF'S REMAINING ALLEGATIONS OF ERROR

Mr. Colten also alleges error in: (1) the ALJ's evaluation of Plaintiff's subjective allegations and (2) the RFC. *See supra*. But the Court should decline consideration of these alleged errors because the analysis of a claimant's subjective allegations is

inexorably intertwined with the RFC, which may be affected following a remand for further evaluation of the findings and opinions from Drs. Daniel, Newton, and Ashraf. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand."); *see also Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) ("Since the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined."); *Roxanna L. H. v. Berryhill*, 2019 WL 1083564, at *5–6 (N.D. Okla. Mar. 7, 2019) (finding that the ALJ committed reversible error in his consistency analysis of Plaintiff's subjective complaints of pain "which resulted in error in his formulation of Plaintiff's RFC[.]").

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision.

ENTERED on March 18, 2025.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE